### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

WAYNE D. GRAY,
          *Plaintiff*,

                    v.                                    No. 3:15-cv-01016 (JAM)

JAY R. WESELMANN, *et al.*,
          *Defendants*.

### RULING ON MOTION FOR SUMMARY JUDGMENT

It is frightening to think that our Government may mistakenly deport people who are actually U.S. citizens. It is frightening but not unheard of. *See* Jacqueline Stevens, *U.S. Government Unlawfully Detaining and Deporting U.S. Citizens as Aliens*, 18 Va. J. Soc. Pol'y & L. 606 (2011) (empirical study of incidence of wrongful removal of U.S. citizens).

Plaintiff Wayne D. Gray is a U.S. citizen. He was born in Jamaica and came with his parents to the United States as a child. While still a child and living with his father, he became a citizen by automatic operation of law when his father naturalized as a U.S. citizen in January 1990. Unfortunately, plaintiff did not know that. Nor did the INS or even plaintiff's own immigration lawyer realize plaintiff's true status when he was deported to Jamaica in 1998 after having been convicted for a robbery.

Plaintiff soon found his way back into the United States. But he was arrested again in 2012, and this time the federal government criminally charged him with unlawful reentry into the United States. It was a charge based in no small part on plaintiff's sworn statement to federal agents that he was illegally here in the United States. Only after plaintiff pleaded guilty to the charge and was awaiting sentencing did one of plaintiff's criminal defense attorneys realize that plaintiff may in truth be a U.S. citizen.

This prompted a further investigation by immigration authorities that eventually validated

plaintiff's claim. Plaintiff was released from prison, and the prosecution was dropped.

Now a free man, plaintiff has sued the United States under the Federal Tort Claims Act. He alleges multiple tort claims including false arrest/imprisonment, malicious prosecution, negligence, and negligent/intentional infliction of emotional distress.

The United States has moved for summary judgment. It readily concedes that plaintiff is a U.S. citizen but maintains nonetheless that its agents had probable cause for plaintiff's arrest, detention, and prosecution. I agree. Therefore, I conclude that the motion for summary judgment must be granted.

## BACKGROUND

Plaintiff immigrated with his parents to the United States in 1982 when he was 8 years old, and he became a lawful permanent resident. His parents soon divorced in 1986. On January 19, 1990, his father naturalized as a U.S. citizen. Although no one seemed to realize it at the time (not least of all plaintiff himself), the consequence of his father's naturalization was that plaintiff also derivatively became a U.S. citizen by operation of law, because plaintiff was living with his father at the time and was still a minor. *See* 8 U.S.C. § 1432(a) (now repealed); *see also Gil v. Sessions*, --- F.3d ---, 2017 WL 1032575, at *2 (2d Cir. 2017) (quoting and discussing former derivative citizenship statute that was repealed in 2000).

Soon after plaintiff turned 18 years old, he was convicted of robbery in a Connecticut state court. After plaintiff served several years in prison for this robbery, the Immigration and Naturalization Service (INS) placed plaintiff into deportation (removal) proceedings in 1995.

These proceedings were premised on a mistaken assumption that plaintiff was not a U.S. citizen. During those deportation proceedings, INS agents completed a Record of Deportable Alien, which consisted of notes discussing plaintiff's history. This record states in part:

"Alienage and deportability established. . . . Subject is a 21 year old native and citizen of Jamaica. . . . Subject's parents are both [naturalized] [United States citizens (USC)]. Mother became USC on 9/4/92. Subject did not derive." Doc. #42-3 at 15. Another note in the Record of Deportable Alien created during plaintiff's removal proceedings states: "Lives w/ mother. Father left mother in 1987." *Id.* at 18. In short, these notes reflect a belief that plaintiff had lived with his mother (not his father) before he turned 18 years old, and therefore that he had not derived U.S. citizenship because his mother did not naturalize as a U.S. citizen until after plaintiff turned 18 years old.

On the basis of this information, the INS issued an order to show cause alleging that plaintiff was not a citizen of the United States, and alleging that his robbery conviction rendered him deportable. *Id.* at 9–10. Despite being represented by an attorney at the time, plaintiff conceded the charge. Rather than contest plaintiff's deportability, plaintiff's lawyer requested discretionary relief from deportation, which relief was denied. Plaintiff was ordered removed from the United States to Jamaica on May 22, 1996.

Still represented by counsel, plaintiff appealed his order of removal to the Board of Immigration Appeals (BIA). Again, he did not claim that he was actually a U.S. citizen. After the BIA affirmed the order of removal, plaintiff's counsel continued plaintiff's appeals: he moved to reopen with the BIA, appealed the BIA's reaffirmance of the appeal to the Second Circuit, filed a motion for stay of deportation, and filed a petition for writ of habeas corpus in federal court. During all of this time, from 1995 through 1998, plaintiff and his counsel continued to concede plaintiff's status as a Jamaican citizen. Plaintiff was finally deported in 1998, after he indicated that he no longer wanted to fight his case and wished to return to Jamaica.

Plaintiff soon returned incognito to the United States in 1999. But more than ten years

3

later, he was arrested in North Carolina in 2012 on a warrant for identity theft. This arrest in turn prompted a federal criminal prosecution against him for unlawful reentry after deportation. Plaintiff was transferred to immigration custody where he met with Special Agent Bryan Moultis of Immigration and Customs Enforcement (ICE). He told Agent Moultis that he was a Jamaican national who had been previously ordered removed from the United States by an immigration judge pursuant to an order of removal. He explained that he was in the United States illegally. He gave them a sworn, handwritten statement that he was a citizen of Jamaica and was in the United States illegally. Doc. #42-3 at 89.

Agent Moultis believed plaintiff, but nevertheless researched the issue and created a temporary file containing plaintiff's prior removal order, law enforcement related documents, and electronic records. After discussing this matter with his supervisor, Agent Moultis concluded that probable cause existed to lodge a criminal complaint against plaintiff for unlawful reentry into the United States. *See* 8 U.S.C. § 1326.

He began to draw up the paperwork, and he had access to plaintiff's so-called "alien file," known as an "A-file." *See generally Dent v. Holder*, 627 F.3d 365, 372 (9th Cir. 2010) (discussing contents of "A-files"). The A-file for plaintiff was voluminous, spanning hundreds of pages. Among many other documents, it included plaintiff's prior deportation order (and records from the various appeals in which plaintiff conceded his deportability on advice of counsel), as well as the Records of Deportable Alien (as discussed above) containing the notations that plaintiff had lived with his mother after his parents' divorce.

Beyond these documents, however, two more documents were buried within the A-file that arguably could have put Agent Moultis on notice that plaintiff had derived U.S. citizenship at the time that his father naturalized. First, plaintiff's father's application for naturalization that

4

was filed in 1989 noted that plaintiff lived with him. Doc. #42-3 at 61. Second, a misdemeanor summons that was issued against plaintiff in 1991 also listed plaintiff's address at his father's address. *Id.* at 58. In addition, according to plaintiff, while he was being booked in ICE custody, he saw Agent Moultis looking at a computer screen and exclaim to his supervisor: "For Christ sake, Tom, both his parents are citizens." Doc. #46-3 at ¶¶ 5–6.

On August 29, 2012, Agent Moultis presented a complaint affidavit to a federal magistrate judge in the Eastern District of North Carolina. The affidavit stated that plaintiff was a citizen of Jamaica, that plaintiff had been deported, that plaintiff had illegally reentered the United States, and that plaintiff had admitted to each of these facts. Doc. #42-3 at 82. The affidavit concluded with Agent Moultis's statement that probable cause existed to conclude that plaintiff was an alien who had illegally reentered the United States.

The federal magistrate judge issued the arrest warrant, and plaintiff was arrested. On September 6, 2012, plaintiff waived his preliminary hearing and detention hearing. He was soon indicted for illegal reentry on September 12, 2012.

On March 12, 2013, plaintiff pled guilty to the indictment. But plaintiff's fortunes took a turn for the better when a few months later he obtained new counsel for his criminal case who decided to take a closer look at the issue of plaintiff's citizenship status. On October 11, 2013, plaintiff's new counsel advised the Government that plaintiff could have derived citizenship through his father in 1990. Plaintiff's counsel obtained letters from plaintiff's father and mother in which they averred that plaintiff had indeed lived with plaintiff's father when plaintiff's father was naturalized in 1990.

Because of this newly raised question about plaintiff's citizenship, he was not sentenced, and the prosecution against him was essentially stayed while a further investigation was

conducted.

On May 27, 2014, plaintiff received a letter from United States Citizenship and Immigration Services (USCIS) requesting further evidence of legal and physical custody of plaintiff with his father during the relevant time period. In response, plaintiff's immigration attorney noted the difficulty of proving up this claim, stating that "no one in this family knew that [plaintiff] might acquire citizenship through his father's naturalization and no one lived as if they were amassing evidence to prove this." Doc. #42-3 at 58. On September 3, 2014, plaintiff received a determination from USCIS that he had indeed derived citizenship through his father in 1990. Within a day, plaintiff's indictment was dismissed, and plaintiff was released from custody.

Plaintiff eventually filed this lawsuit against the United States as well as individual defendants who have previously been dismissed from this action. The United States has moved for summary judgment.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all

ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S.

Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a

'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

       Plaintiff seeks to recover damages from the United States government. But "[t]he United

States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its

consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States*

*v. Mitchell*, 445 U.S. 535, 538 (1980). In 1946, Congress enacted the Federal Tort Claims Act

(FTCA), a statute that allows for tort suits against the United States under specific circumstances.

"The FTCA waives the government's sovereign immunity in actions for money damages arising

out of injury, loss of property, personal injury or death caused by the 'negligent or wrongful' act

or omission of a government employee 'while acting within the scope of his office or

employment, under circumstances where the United States, if a private person, would be liable to

the claimant in accordance with the law of the place where the act or omission occurred.'"

*Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016) (quoting 28 U.S.C. § 1346(b)(1)). In this

manner, "the FTCA directs courts to consult state law to determine whether the government is

liable for the torts of its employees." *See Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir.

2012).[1]

       Here, plaintiff alleges four state law claims for relief against the United States: (1) false

arrest/imprisonment; (2) malicious prosecution; (3) negligence; and (4) negligent/intentional

---

[1] The United States does not argue at this time that the torts alleged in this case lack a private analogue to make them actionable under the FTCA. Nor does it argue that its agents acted pursuant to the FTCA's discretionary function exception.

infliction of emotional distress. Doc. #1 at 12–16. Because the events at issue took place in North
Carolina, I will apply North Carolina law to each of these claims.

In order for plaintiff to prevail on either of the first two claims—false
arrest/imprisonment and malicious prosecution—he must prove a lack of probable cause to
detain and prosecute him for unlawful reentry. *See Turner v. Thomas*, 794 S.E.2d 439, 444 (N.C.
2016); *Adams v. City of Raleigh*, 782 S.E.2d 108, 112 (N.C. Ct. App.), *review denied*, 793 S.E.2d
224 (N.C. 2016). For both claims, probable cause is determined as of the time that plaintiff was
subject to arrest, detention, and the initiation of the prosecution. *See Turner*, 794 S.E.2d at 444–
45.

Under North Carolina law, probable cause is the "existence of such facts and
circumstances, known to him at the time, as would induce a reasonable man to commence a
prosecution." *Turner*, 794 S.E.2d at 445 (quoting *Morgan v. Stewart*, 144 N.C. 424, 430 (1907)).
"Probable cause is a flexible, common-sense standard. It does not demand any showing that such
a belief be correct or more likely true than false. A practical, nontechnical probability is all that
is required." *State v. Sinapi*, 359 N.C. 394, 399 (2005) (emphasis omitted).

It is readily apparent that there was probable cause to believe in 2012 that plaintiff was an
alien—not a U.S. citizen—and therefore to arrest, detain, and charge plaintiff with unlawful
reentry. The most telling evidence was plaintiff's own repeated admissions that he was *not* a U.S.
citizen. Just the fact that plaintiff had previously been deported for being an illegal alien also
gave ample reason for law enforcement agents to conclude in 2012 that plaintiff was not a U.S.
citizen.

No other documents in plaintiff's lengthy A-file clearly or conclusively rebutted the
existence of probable cause. To the contrary, the file notes made in conjunction with the Record

of Deportable Alien indicated that plaintiff had lived with his mother, not with his father, prior to when he turned 18 years old. The fact that two additional documents (as discussed above) suggested that plaintiff lived with his father in 1989 and 1991 did not dispel probable cause in light of all the other evidence indicating that plaintiff was not a U.S. citizen. At best, these documents gave reason to further investigate plaintiff's residence at the time that his father naturalized in 1990.

Nor was probable cause dispelled by Agent Moultis's alleged acknowledgement in plaintiff's presence that both of plaintiff's parents were U.S. citizens. This was true. But in the absence of evidence that plaintiff lived as a minor with one of them at the time that the parent naturalized, the naturalized citizenship of plaintiff's parents would not have sufficed to confer derivative citizenship.

It is very unfortunate that the truth did not emerge at an earlier time. But the fact that the agents were ultimately mistaken about plaintiff's citizenship status does not mean that they lacked probable cause in the first instance. *See, e.g.*, *Turner*, 794 S.E.2d at 445 (noting that "the subsequent acquittal of a defendant does not, as a matter of law, automatically negate the existence of probable cause at the time prosecution was commenced").

Viewing the facts in the light most favorable to plaintiff, I conclude that there is no genuine fact issue to suggest that the United States did not have probable cause to arrest, detain, and charge plaintiff in 2012 with the crime of unlawful reentry into the United States. Accordingly, I will grant summary judgment against plaintiff as to his claims for false arrest/imprisonment and malicious prosecution.

That leaves plaintiff's remaining claims for negligence and negligent/intentional infliction of emotional distress. Importantly, plaintiff does not identify any conduct to support

these claims that is different from the conduct he alleges in support of his claims for false arrest/imprisonment and malicious prosecution. Therefore, for these additional claims, I similarly conclude that plaintiff's failure to show an absence of probable cause precludes relief. For example, a negligence claim requires proof of a breach of duty, and plaintiff has not identified any duty beyond a duty not to arrest, detain, and prosecute him without probable cause. *See, e.g.*, *Cox v. Roach*, 218 N.C. App. 311, 327 (2012) (rejecting "gross negligence" claim where plaintiff was unable to show police lacked probable cause for arrest and prosecution).

### CONCLUSION

Plaintiff has not shown a triable issue of fact on the issue of whether the United States lacked probable cause at the relevant time to support his arrest, detention, and prosecution for unlawful reentry into the United States. Because there is no genuine issue of fact remaining as to probable cause, plaintiff cannot prevail on any of the state law claims that he asserts against the United States under the Federal Tort Claims Act. Accordingly, the United States' motion for summary judgment (Doc. #42) is GRANTED.

It is so ordered.

Dated at New Haven, Connecticut, this 31st day of March 2017.

*/s/ Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge